IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENRICUS VAN DER STEEN,<br><br>    Plaintiff,<br><br>  v.<br><br>SYGEN INTERNATIONAL, PLC, et al.,<br><br>    Defendants.                              / | No. C 06-4966 CRB<br><br>**MEMORANDUM AND ORDER** |

    Henricus Van Der Steen ("Plaintiff") is a citizen of the Netherlands and a permanent resident alien domiciled in California. He filed suit in California state court against his former employer and related corporate entities. He asserts, among other claims, breach of contract. The case was removed to federal court on the basis of diversity jurisdiction. Now pending before the Court is Plaintiff's motion to remand.

    Presently, the only defendants remaining in the suit are two alien corporations. The question presented by Plaintiff's motion is whether this Court has jurisdiction under the diversity statute, 28 U.S.C. § 1332, over a suit solely between aliens, when one of the alien parties is a lawful permanent resident. Plaintiff argues that, because the case now involves only an alien plaintiff and alien defendants, this Court lacks constitutional authority to hear it. For the reasons set forth below, the Court agrees.

## BACKGROUND

Plaintiff came to the United States from the Netherlands in 1998 as part of his job with Sygen International, Ltd. ("Sygen"). In 2001, he became a legal permanent resident. Thus, at the time he filed this lawsuit, Plaintiff was a permanent resident alien domiciled in California.

Plaintiff worked primarily at Sygen's research lab in Berkeley, California, until 2003, when the company decided to move its research lab from California to Kentucky. Thereafter, Plaintiff continued to work for Sygen from his home in Marin County, California. Plaintiff alleges that in 2005 he was offered a new position with Sygen and entered into a new employment contract with the company. According to Plaintiff, Sygen agreed to establish a research chair at the University of Western Kentucky and to employ him in that position as research liaison between Sygen and the University. Plaintiff further alleges that Sygen breached this contract when it subsequently repudiated its agreement to fund the position. Plaintiff filed suit on June 30, 2006, asserting claims for breach of employment contract, wrongful termination, various related statutory violations, and other tort claims. Plaintiff originally named four defendants in the suit: (1) Sygen, (2) Genus, PLC ("Genus"), (3) ABS Global, Inc. ("ABS"), and (4) PIC International Group, PLC ("PIC").

Two of these companies, Sygen and PIC, are actually the same entity. Sygen, which was previously called PIC International Group, changed its name in 2003 when it moved its headquarters to England. The company is incorporated and has its principal place of business in the United Kingdom. Currently, Sygen has only one employee, an internal auditor, working in California. As noted above, it also operates a research laboratory in the United States. Sygen is a wholly owned subsidiary of Genus.

Genus is also a United Kingdom company and has its principal place of business there. Genus has no employees and conducts no business in the United States, other than through its separately incorporated subsidiaries, Sygen and ABS.

ABS is a Delaware corporation whose headquarters are in Wisconsin. It is the only citizen party named in this lawsuit. Along with Sygen, ABS is a wholly owned subsidiary of

Genus. The complaint reveals that Plaintiff named ABS as a defendant under the erroneous impression that Genus and ABS were the same company. Plaintiff never performed any work for ABS and made no specific allegations against that entity. In light of this misidentification, the Court has dismissed ABS, with Plaintiff's consent.

Thus, the only parties remaining in the case are Plaintiff (a permanent resident alien) and Defendants Sygen (a foreign corporation[1]) and Genus (a foreign corporation).

## DISCUSSION

In 1988, Congress amended the diversity statute to include the following language: "For purposes of this section, . . . and section 1441 [which governs removal], an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled." Judicial Improvements and Access to Justice Act, Pub. L. No. 100-702, § 203, 102 Stat. 4642, 4646 (1988) (codified at 28 U.S.C. § 1332(a)) ("the 1988 Amendment"). Thus, on its face, the 1988 Amendment classifies Plaintiff as a citizen of California for purposes of diversity jurisdiction, and thereby appears to confer federal jurisdiction over this case.

The problem in this case is that a literal application of the 1988 Amendment leads to an arguably unconstitutional result. Article III provides in part that the federal judicial power "shall extend to [suits] . . . between a State, or the Citizens thereof, and foreign States, Citizens or Subjects." U.S. CONST. art. III, § 2. The Supreme Court has long held that this conferral of so-called "alienage jurisdiction" does not extend to cases involving only aliens. Montalet v. Murray, 8 U.S. (4 Cranch) 46, 47 (1807) ("[T]he courts of the United States have no jurisdiction of cases between aliens."); see also Kramer v. Caribbean Mills, Inc., 394 U.S.

---

[1] The fact that Sygen maintains a research lab in the United States does not alter its status as a foreign citizen. See Nike, Inc. v. Comercial Iberica De Exclusivas Deportivas, S.A., 20 F.3d 987, 990 (9th Cir. 1994) ("We draw no distinction between corporations incorporated in a state of the United States and those incorporated in a foreign country when determining the corporation's citizenship for purposes of diversity jurisdiction. In each instance, the corporation is deemed a citizen of its place of incorporation and the location of its principal place of business." (citation omitted)); Bailey v. Grand Trunk Lines New England, 805 F.2d 1097, 1101 (2d Cir. 1986) ("An alien corporation's worldwide principal place of business, and not its principal place of business in the United States, is controlling.").

3

823, 825 (1969) (stating that a district court would have no jurisdiction over a suit between foreign entities); Hodgson v. Bowerbank, 9 U.S. (5 Cranch) 303, 303 (1809) (same).

Thus, the issue presented here is whether the Court has jurisdiction to hear claims brought by an alien permanent resident against two foreign corporations. On the one hand, Defendants argue that the plain language of the diversity statute makes this a suit between a California citizen and two foreign corporations, over which this Court may properly exercise alienage jurisdiction. On the other hand, Plaintiff argues that such an application of the 1988 Amendment would exceed the constitutional limits on alienage jurisdiction set forth in Article III by purporting to create federal jurisdiction over a suit solely between aliens.

The Court notes that it is not the first to confront the apparent conflict between § 1332(a) and the constitutional limits on alienage jurisdiction.[2] Other courts have concluded, with near uniformity, that a literal application of § 1332(a) would be unconstitutional in cases such as this one. As the D.C. Circuit Court of Appeals explains:

> [A] literal reading of the 1988 amendment to § 1332(a) would produce an odd and potentially unconstitutional result. It would . . . create federal diversity jurisdiction over a lawsuit brought by one alien against another alien, without a citizen of a state on either side of the litigation. The judicial power of the United States does not extend to such an action under the Diversity Clause of Article III.

Saadeh, 107 F.3d at 58 (citing Hodgson, 9 U.S. at 303). Accord Engstrom, 959 F. Supp. at 551 (noting that the 1988 Amendment "seems to lend itself to an entirely unintended and almost surely unconstitutional interpretation"); Chavez-Organista, 208 F. Supp. 2d at 176-77 ("[T]he plain language of the 1988 Amendment could not govern inasmuch as it expands diversity jurisdiction to cases where a permanent resident alien residing in state A sues only a

---

[2] See Intec USA, LLC v. Engle, 2006 U.S. App. LEXIS 27165 (7th Cir. Nov. 2, 2006); Saadeh v. Farouki, 107 F.3d 52 (D.C. Cir. 1997); Singh v. A.G. Daimler-Benz, 9 F.3d 303 (3d Cir. 1993); see also Gall v. Topcall Int'l, A.G., 2005 U.S. Dist. LEXIS 4421 (E.D. Pa. Mar. 22, 2005); Chavez-Organista v. Vanos, 208 F. Supp. 2d 174 (D.P.R. 2002); Marcus v. Five J. Jewelers Precious Metals Indus. Ltd., 111 F. Supp. 2d 445 (S.D.N.Y. 2000); Matsuda v. Wada, 128 F. Supp. 2d 659 (D. Haw. 2000); Banci v. Wright, 44 F. Supp. 2d 1272 (S.D. Fla. 1999); Lee v. Trans American Trucking Serv. Inc., 111 F. Supp. 2d 135 (E.D.N.Y. 1999); China Nuclear Energy Indus. Corp. v. Arthur Andersen, LLP, 11 F. Supp. 2d 1256 (D. Colo. 1998); Engstrom v. Hornseth, 959 F. Supp. 545 (D.P.R. 1997); Helmut J. Unkel Ltd. v. Tay, 1995 U.S. Dist. LEXIS 22196 (N.D. Cal. Feb. 7, 1995); Lloyds Bank PLC v. Norkin, 817 F. Supp. 414 (S.D.N.Y. 1993); Arai v. Tachibana, 778 F. Supp. 1535 (D. Haw. 1991).

4

permanent resident alien residing in state B or a nonresident alien, thus exceeding the limits of Article III."); Tay, 1995 U.S. Dist. LEXIS 22196, at *4 (noting that there would be no federal jurisdiction over a suit between a permanent resident alien and a nonresident alien); Lee, 111 F. Supp. 2d at 141 (finding no federal jurisdiction over an action between plaintiffs permanent resident aliens and defendants alien corporations). Scholars have likewise concluded that "any interpretation of the [1988 Amendment] that would provide diversity jurisdiction for a case solely involving aliens would be unconstitutional." 15 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 102.78[2] (3d ed. 2006); see also John B. Oakley, Recent Statutory Changes in the Law of Federal Jurisdiction and Venue: The Judicial Improvements Act of 1988 and 1990, 24 U.C. DAVIS L. REV. 735, 745 (1991) ("By facially authorizing such suits between aliens the 1988 Act conflicts with the rule . . . that article III does not permit federal alienage jurisdiction over a suit in which aliens are the only opposing parties."); Kevin R. Johnson, Why Alienage Jurisdiction? Historical Foundations and Modern Justifications for Federal Jurisdiction Over Disputes Involving Noncitizens, 21 YALE J. INT'L L. 1, 25 (1996) ("[T]he amendment potentially allows an alien, who has been admitted for permanent residence into the United States and is domiciled in a state, to sue another alien in federal court, an unconstitutional result."). Indeed, this court is aware of no authority to support the proposition that the exercise of federal jurisdiction would be constitutional on the facts of this case.

"Where an otherwise acceptable construction of a statute would raise serious constitutional problems, [a court should] construe the statute to avoid such problems unless such a construction is plainly contrary to the intent of Congress." Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Constr. Trades Council, 485 U.S. 568, 575, (1988). While it is true that courts do not ordinarily resort to legislative history where statutory language is plain on its face, Garcia v. United States, 469 U.S. 70, 76 (1984), it is an axiomatic principle of statutory interpretation that courts should not construe statutes in a fashion that raises "serious constitutional doubts," Clark v. Martinez, 543 U.S. 371, 381-382 (2005). Instead, where "the literal application of a statute will produce a result demonstrably at odds with the

5

intentions of its drafters, . . . those intentions must be controlling." <u>Griffin v. Oceanic Contractors, Inc.</u>, 458 U.S. 564, 571 (1982); <u>see also</u> <u>Public Citizen v. U.S. Dep't of Justice</u>, 491 U.S. 440, 454 (1989) ("Looking beyond the naked text for guidance is perfectly proper when the result it apparently decrees is difficult to fathom or where it seems inconsistent with Congress' intention."). Thus, given that a literal application of the 1988 Amendment raises serious constitutional questions in this case, an examination of the statute's history is appropriate. <u>See</u> <u>Intec</u>, 2006 U.S. App. LEXIS 27165, at *12 (Easterbrook, J.).

Several other courts have previously engaged in an exhaustive analysis of the history behind the 1988 Amendment. <u>See</u> <u>Saadeh</u>, 107 F.3d at 57-61; <u>Singh</u>, 9 F.3d at 306-10; <u>Lee</u>, 111 F. Supp. 2d at 139-41; <u>Engstrom</u>, 959 F. Supp. at 549-53; <u>Arai</u>, 778 F. Supp. at 1538-42. Though many courts have noted that the legislative history is limited, remarks by Senator Howell Heflin provide the most revealing commentary:

> [The pre-1988 version of § 1332(a)] gives the district courts diversity jurisdiction over actions between citizens of a State and citizens or subjects of a foreign state. Diversity jurisdiction exists under this provision even though the alien may have ben admitted to the United States as a permanent resident . . . . There is no apparent reason why actions between persons who are permanent residents of the same State should be heard by Federal courts merely because one of them remains a citizen or subject of a foreign state.

<u>Arai</u>, 778 F. Supp. at 1539-40 (quoting 134 Cong. Rec. 31,055 (Oct. 14, 1988)). Indeed, courts have concluded that the <u>only</u> indication of congressional purpose in the legislative history is that Congress' intent in passing the 1988 Amendment was to eliminate so-called "suits between neighbors." That is, Congress wished to eliminate federal jurisdiction over lawsuits between citizens and permanent resident aliens residing in the same state. <u>See</u> <u>Saadeh</u>, 107 F.3d at 60 ("[T]he [1988] Amendment clearly appears to have been intended only to eliminate subject matter jurisdiction of cases between a citizen and an alien living in the same state" (internal quotations omitted)); <u>Singh</u>, 9 F.3d at 309 ("The Senate's consideration of [the 1988 Amendment] focused on the incongruity of permitting a permanent resident alien living next door to a citizen to invoke federal jurisdiction for a dispute between them while denying a citizen living across the street the same privilege."); <u>Lee</u>, 111 F. Supp. 2d at 141 ("Congress enacted the [1988] Amendment to address the 'suits

6

between neighbors' problem."); <u>Arai</u>, 778 F. Supp. at 1540 ([The 1988 Amendment] was intended to eliminate suits between [neighbors]. There is no evidence that Congress enacted the provision for any other purpose."); <u>see</u> <u>also</u> 15-102 MOORE ET AL., <u>supra</u>, at § 102.78[1] ("The purpose of the [1988] [A]mendment was to terminate diversity jurisdiction between United States citizens and permanent resident aliens of the same state.").

Thus, it appears that Congress' principal aim in passing the 1988 Amendment was to contract, not expand, the scope of federal diversity jurisdiction. See <u>Saadeh</u>, 107 F.3d at 59 ("[T]he legislative history of [the 1988 Amendment] makes clear that Congress focused on reducing the caseload of the federal courts by contracting the scope of diversity jurisdiction"); <u>Lee</u>, 111 F. Supp. 2d at 141 ("Congress's intention that the [1988] Amendment limit federal courts' diversity jurisdiction is supported by the legislative history."); <u>Arai</u>, 778 F. Supp. at 1542 ("The legislative history is . . . unequivocal that Congress sought to ameliorate the overburdened federal judicial system by reducing, not expanding, diversity and alienage jurisdiction."); John B. Oakley, <u>supra</u>, at 741-42 (noting that the 1988 Amendment had the "modest . . . objective to rid the federal diversity docket of a small category of essentially localized lawsuits"). <u>But see</u> <u>Singh</u>, 9 F.3d at 309 ("[T]here is . . . nothing [in the legislative history] to support [the] view that the entire 1988 [Amendment] was characterized by a 'clarity of purpose' to reduce diversity jurisdiction.").

This Court agrees that it would be incongruous with congressional intent to construe the 1988 Amendment as creating federal jurisdiction over suits brought by permanent resident aliens against other aliens residing anywhere in the world. See <u>Saadeh</u>, 107 F.3d at 60 ("It would be illogical to conclude that Congress intended to eliminate diversity jurisdiction in [suits between neighbors], but simultaneously intend to expand diversity jurisdiction in cases between an alien permanently residing in one state and an alien permanently residing in another state.").

Because a plain reading of § 1332(a) would unconstitutionally extend federal jurisdiction to allow a suit solely between aliens, and because such an interpretation would be contrary to the legislative intent behind the 1988 Amendment, this Court declines to consture

7

the statute as conferring federal jurisdiction in cases involving only aliens on both sides. See Edward J. DeBartolo Corp., 485 U.S. at 575; Griffin, 458 U.S. at 571. In holding that the 1988 Amendment does not give a district court jurisdiction over a suit solely between aliens, the Court joins the vast majority of tribunals that have refused to apply the statute's text literally in cases such as the one at bar.[3] See, e.g., Gall, 2005 U.S. Dist. LEXIS 4421 at *17; Chavez-Organista, 208 F. Supp. 2d at 177; Matsuda, 128 F. Supp. 2d at 667; Banci, 44 F. Supp. 2d at 1276; Tay, 1995 U.S. Dist. LEXIS 22196, at *4; see also Intel, 2006 U.S. App. LEXIS 27165, at *9-15 (holding that "the best reading" of the 1988 Amendment is that it confers "both state and foreign citizenship" on permanent resident aliens, and that no jurisdiction exists when a case involves only aliens, including legal permanent residents).

Defendants contend that the Court nonetheless has jurisdiction over the case because Plaintiff originally included ABS, a corporate citizen of Wisconsin and Delaware, as a defendant. The Court acknowledges that a controversy exists about whether the 1988 Amendment should be applied literally when a citizen party is present. Compare Saadeh 107 F.3d at 61 (holding that no jurisdiction exists when there is "an alien on one side, and an alien and a citizen on the other side, regardless of the residence status of the aliens"), with Singh 9 F.3d at 312 (holding that jurisdiction exists over a suit brought by a permanent resident alien plaintiff against both alien and citizen defendants), and Intel, 2006 U.S. App. LEXIS 27165, at *9-15 (same). The Court need not resolve that more difficult question today. Even if the Court were to assume that Singh and Intel are correct, and that removal initially was proper by virtue of the presence of a citizen defendant, the dismissal of ABS

---

[3] Admittedly, this approach to the diversity statute is not without problems. Circumventing the literal language of § 1332(a) leads to the curious result that a permanent resident alien's "citizenship" turns entirely on whom he is suing. Like a chameleon, the citizenship of the lawful permanent resident changes with the context of his lawsuit — if he sues an alien, he is treated as an alien; if he sues a U.S. citizen, he is treated as a citizen. It is indeed strange that a plaintiff's identity should hinge on that of his adversary. The Court accepts this anomaly as the unfortunate consequence of hastily enacted legislation. The approach of the overwhelming majority of the courts discussed above must be embraced as the least problematic, though certainly not problem-free, interpretation of § 1332(a).

8

eliminates any basis for jurisdiction that <u>Singh</u> or <u>Intel</u> might provide.[4] Therefore, even assuming this Court had jurisdiction at the time of removal, the dismissal of Plaintiff's claims against ABS at best leaves this Court with only supplemental jurisdiction over the case. To the extent it may have such supplemental jurisdiction, the Court declines to exercise it. <u>See</u> 28 U.S.C. § 1367(c)(3).

## CONCLUSION

It is an extraordinary case when constitutional principles require a statute to be applied in a manner directly contrary to its text. This, however, is such a case. The Court joins every other tribunal that has decided the issue in holding that § 1332(a) does not confer jurisdiction over suits, such as this one, solely between aliens. <u>See</u> <u>Mantelet</u>, 8 U.S. at 47; <u>Hodgson</u>, 9 U.S. at 303. To the extent that the presence of a citizen defendant may have conferred jurisdiction upon this Court when it was removed, this Court declines to exercise it now. Plaintiff's motion for remand is therefore GRANTED.

**IT IS SO ORDERED.**

Dated: November 20, 2006

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

---

[4] The Third Circuit in <u>Singh</u> explicitly limited its jurisdictional holding to cases involving at least one citizen party. The <u>Singh</u> court noted the "potential" and "intriguing" constitutional question in applying the 1988 Amendment literally to suits involving solely alien parties. <u>Singh</u>, 9 F.3d at 311-12. But because the plaintiff in <u>Singh</u>, a permanent resident alien, had sued both citizen and alien defendants, the Third Circuit declined to reach the constitutional issue presented in this case. <u>See id.</u> at 312. The Court notes that even in the Third Circuit, at least one district court has declined to apply <u>Singh</u> when no United States citizen is involved in the case, on the ground that the exercise of such jurisdiction would be unconstitutional. <u>See</u> <u>Gall</u>, 2005 U.S. Dist. LEXIS 4421, at *9 n.4, 11, 17, 23. The Seventh Circuit's recent decision in <u>Intel</u> is in accord, holding that federal courts may adjudicate suits brought by a permanent resident alien against both diverse citizens and aliens, but not suits brought only against aliens. This Court likewise concludes, contrary to Defendants' contention, that <u>Singh</u> does not apply to cases, such as this one, where no citizen parties are present.